UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE PALM,<br><br>        Plaintiff,<br><br>    v.<br><br>C. PFEIFFER, *et al.*,<br><br>        Defendants. | Case No. 1:25-cv-01045-EPG (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS E. PEREZ AND J. GUERRA FOR BEING DELIBERATELY INDIFFERENT TO HIS SAFETY NEEDS<br><br>(ECF NO. 11)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

Plaintiff Duane Palm is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 6). His first amended complaint alleges that Defendants were deliberately indifferent to his safety needs by housing him at a prison where he was at an elevated risk of contracting Valley Fever and were deliberately indifferent to his serious medical needs by failing to adequately diagnose and treat his Valley Fever. (ECF No. 11).

The first amended complaint is now before the Court for screening. Upon review, the Court concludes that Plaintiff's complaint should proceed past screening only on his claims that Defendants E. Perez and J. Guerra were deliberately indifferent to his safety needs by housing

1

him in a prison where he was at an elevated risk of contracting Valley Fever. All other claims and Defendants should be dismissed without further leave to amend.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis*, the Court may dismiss a claim on these same bases under 28 U.S.C. § 1915(e)(2)(B)(i-iii). (ECF No. 6).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.    INITIAL COMPLAINT AND SCREENING ORDER[1]

Plaintiff filed his initial complaint on August 11, 2025, about events occurring after his

---

[1] For readability, minor alterations, such as changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

transfer to Wasco State Prison (WSP), suing five WSP employees: (1) Warden C. Pfeiffer; (2) Primary Care Physician Kai Chin-Jeng; (3) Correctional Counselor E. Perez; (4) Facility Captain J. Guerra; and (5) John Doe 1, described as the Chief Medical Officer at WSP. (ECF No. 1).

Plaintiff claimed that Defendant Chin-Jeng was deliberately indifferent to his serious medical needs by not diagnosing and treating his Valley Fever, (*id.* at 18-19), and the correctional Defendants were deliberately indifferent to his safety needs by housing him at WSP where he was at a higher risk of contracting Valley Fever, (*id.* at 19-20).

The Court screened the complaint on January 15, 2026, concluding that Plaintiff failed to state a claim against any Defendant but provided the legal standards for his claims and granted him leave to file an amended complaint. (ECF No. 8).

**III.    SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff filed his first amended complaint on March 23, 2026. (ECF No. 11). He sues the same five WSP Defendants from his initial complaint: (1) Warden C. Pfeiffer; (2) Primary Care Physician Kai Chin-Jeng; (3) Correctional Counselor E. Perez; (4) Captain J. Guerra; and (5) John Doe 1,[2] described as the Chief Medical Officer at WSP. (*Id.* at 2-3).

Plaintiff brings two claims, alleging (1) deliberate indifference to his safety needs and (2) deliberate indifference to his serious medical needs. He offers the following facts in support of his first claim.

Plaintiff "is African American" and "CDCR had an exclusion policy restricting African American inmates and those with cocci 2 risk factors from housing in hyperendemic institutions such as [WSP] and Pleasant Valley [PVSP] due to Valley Fever risk." (*Id.* at 4). Plaintiff was previously housed at PVSP but was transferred from there under the "Valley Fever exclusion criteria." (*Id.*). "Plaintiff has a documented high risk chrono in his central file reflecting such prior transfer to [WSP]." (*Id.*).

Plaintiff indicates that, while at WSP, he went before the classification committee for

---

[2] Plaintiff uses "John Doe/Jane Doe" in the first amended complaint. (ECF No. 11, p. 3). The Court will use "John Doe" to describe this Defendant.

transfer. Defendants Perez and Guerra had access to his central file, "including documentation reflecting Plaintiff was African American and had cocci 2 risk restrictions." (*Id.*). He elsewhere states that he "had a documented high-risk chrono and prior transfer due to cocci exclusions policy" and "Perez and Guera had access to and reviewed [his] classification file." (*Id.* at 6). Perez and Guera knew that WSP was located "in a hyperendemic region" for Valley Fever. (*Id.* at 4). However, despite knowledge of Plaintiff's high-risk status and the CDCR exclusion guidance, Plaintiff was delayed in being transferred for over a year and remained housed at WSP for 15 months, ultimately contracting Valley Fever.

As to all the Defendants, Plaintiff alleges that they were aware of the serious risk of harm posed to his health from Valley Fever but did not take reasonable measures to abate that risk. Plaintiff contracted Valley Fever at WSP and suffered multiple symptoms, including fever, cough, and headaches.

Citing *Plata*, Plaintiff alleges that it is evident that all Defendants knew since 2006 about Valley Fever's presence. Further, he asserts that studies have suggested and shown that "persons of African descent" are at higher risk for extrapulmonary complications, Plaintiff "is such a person," and prevention efforts are critical for such high-risk populations, which efforts include physical removal "from highly endemic regions." (*Id.* at 4-5). Although all Defendants knew of the increased risk to African Americans, "at no time did they initiate precautions, such as transferring the Plaintiff out." (*Id.* at 5).

Plaintiff asserts that a 2012 report from the Receivers Public Health and Quality Management Units found that WSP had higher cocci rates. Plaintiff says there is no question that all Defendants were aware of the substantial risk of serous harm posed by Valley Fever and asserts that, in *Plata*, the CDCR admitted it was "aware that Valley Fever presents a serious risk to inmate health." (*Id.*). He alleges that all Defendants "knew that failure to exclude Plaintiff from being housed at [WSP] would keep him at risk of severe complications from his Valley Fever infection, since it was found to be inside the hyperendemic Valley Fever area." (*Id.*).

After being housed at WSP, Plaintiff experienced symptoms, including cough, fever,

and weight loss, and submitted 7362s requesting Valley Fever testing and alerted "medical staff of his symptoms" and that he was African American, at high risk, and had been transferred out of PVSP due to cocci risk. (*Id.*).

Plaintiff told Defendant Dr. Chin-Jeng of his high-risk status and requested testing for Valley Fever but Dr. Chin-Jeng "did not immediately order cocci serology testing" but instead treated Plaintiff for pneumonia and prescribed antibiotics that caused severe adverse reactions. (*Id.* at 6). About "one month passed between Plaintiff's initial request for cocci testing and confirmed diagnosis." (*Id.*). Plaintiff deteriorated physically during this time, was hospitalized, and was ultimately diagnosed with Valley Fever. Plaintiff is still on antifungal medication and has permanent lung scarring and experiences shortness of breath upon overexertion and has chronic joint pain.

In support of his second claim, Plaintiff repeats many of the allegations from his first claim. For example, he repeats the facts about how he requested cocci testing from Dr. Chin-Jeng, who allegedly delayed testing, leading to Plaintiff's condition worsening. However, he adds that his "numerous 7362s" also alerted the John Doe Defendant "to his symptoms of cocci and his serious medical needs," but John Doe, along with Dr. Chin-Jeng, employed a "wait-and-see-approach" that was unreasonable. (*Id.* at 8). Plaintiff states that Dr. Chin-Jeng and John Doe sent "him back to his cell" without giving him proper medical treatment and did not order blood tests required for cocci screening when he showed symptoms consistent with Valley Fever. (*Id.* at 9).

Lastly, Plaintiff alleges that, at some point "prior to committee," he informed Perez and Guerra "that he feared for his safety medically and requested that he be transferred." (*Id.* at 9). He told them "of his susceptibility of contracting Valley Fever but his concerns went unheard and ignored as he sat for 15 months after said committee and contracted Valley Fever." (*Id.*).

## IV.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.    Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

> to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

"The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B.      Deliberate Indifference to Safety Needs**

Plaintiff's complaint alleges that Defendants' decision to house him at WSP was deliberately indifferent to his safety needs.

Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). To state a claim under the Eighth Amendment based on involuntary exposure to environmental hazards, an inmate must satisfy both an objective and a subjective component. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (addressing exposure to environmental tobacco smoke).

For the objective factor, inmates must establish "that it is contrary to current standards of decency for anyone to be so exposed against his will" to the hazard. *Id.* This "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused." *Id.* at 36. Instead, courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," meaning that the risk "is not one that today's society chooses to tolerate." *Id.*

For the subjective factor, inmates must show that prison officials are "deliberately indifferent to [their] plight." *Id.* at 35. This means that the prison official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference "entails something more than mere negligence." *Id.* at 835.

With these standards in mind, Plaintiff alleges that Defendants Perez and Guerra had access to, and reviewed, his file that documented his "high-risk chrono and prior transfer due to cocci exclusions policy." (ECF No. 1, p. 6; *see id.* at 4). Further, he indicates that they were involved with the classification committee that decides whether inmates should be transferred. (*Id.* at 4, 9). "Sometime prior to committee," he told them of his susceptibility to contracting Valley Fever and asked to be transferred. (*Id.*). However, they ignored his concerns and he remained in WSP for 15 months, ultimately contracting Valley Fever and suffering severe

symptoms.

Liberally construing Plaintiff's allegations for the purposes of screening, the Court concludes that Plaintiff sufficiently alleges that Defendants E. Perez and J. Guerra were deliberately indifferent to his safety needs by housing him in a prison where he was at an elevated risk of contracting Valley Fever.

However, Plaintiff fails to state a claim against any other Defendant. Unlike Perez and Guerra—who were part of the classification committee deciding whether Plaintiff should be transferred—Plaintiff fails to state facts that any other Defendant had personal involvement in continuing to house him at WSP. Notably, Plaintiff does not allege that Defendants Pfeiffer, Dr. Chin-Jeng, and John Doe were also part of the classification committee or had any other involvement regarding his transfer decision.

Further, to the extent that he seeks to hold any of them liable in a supervisory capacity, supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted). Plaintiff has not alleged any such facts and thus fails to state any claim against supervisory defendants.

Moreover, Plaintiff fails to allege that Pfeiffer, Dr. Chin-Jeng, and John Doe were deliberately indifferent to Plaintiff's safety needs. Unlike with Perez and Guerra, Plaintiff does not allege that the other Defendants knew of and disregarded information about his high-risk status relating to Valley Fever. Plaintiff only alleges that they generally knew of risks posed by Valley Fever from outside sources, such as the *Plata* case. (ECF No. 11, p. 4 – "Dating back to

2006, it is evident that [Defendants] knew of an were aware of Valley Fever's presence as evidenced in *Plata v. Brown*."). However, a general awareness of the presence of, and risks posed by, Valley Fever does not show that Defendants knew of and disregarded a particular risk to Plaintiff. *Swenson v. CDCR Sec'y*, No. 2:24-CV-07164-JLS-AJR, 2025 WL 3152245, at *4 (C.D. Cal. May 14, 2025) (concluding that a plaintiff's documented respiratory condition and defendants' general knowledge of presence of Valley Fever in an area "does not, by itself, show that any Defendants had actual knowledge of a specific and substantial risk to Plaintiff's health from the transfer").

Accordingly, Plaintiff sufficiently alleges that Defendants E. Perez and J. Guerra were deliberately indifferent to his safety needs, but fails to state such a claim against Defendants Pfeiffer, Dr. Chin-Jeng, and John Doe.

### C.    Deliberate Indifference to Serious Medical Needs

Plaintiff also alleges that Defendants were deliberately indifferent to her serious medical needs because they failed to adequate diagnose and treat his Valley Fever.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil

recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 836-37 & n.5 (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (internal quotation marks and citation omitted).

With these standards in mind, Plaintiff alleges that he submitted several 7362s requesting Valley Fever testing and alerted unspecified medical staff of his symptoms. (ECF No. 1, pp. 5, 8). Likewise, Plaintiff contends that his 7362s alerted Dr. Chin-Jeng and John Doe to his symptoms, but they took a "wait-and-see approach." (*Id.* at 8). Elsewhere, he states that they sent "him back to his cell" and did not provide proper treatment. (*Id.* at 9). Plaintiff also states that he informed Dr. Chin-Jeng of his high-risk status and requested Valley Fever testing. However, Dr. Chin-Jeng "did not immediately order cocci serology testing" but instead treated Plaintiff for pneumonia, prescribing him antibiotics that led to severe adverse reactions. (*Id.* at 6). Plaintiff's symptoms worsened, and about a month passed before his initial request for testing and his "confirmed diagnosis." (*Id.*). Elsewhere, Plaintiff implicates all Defendants in being deliberately indifferent to his serious medical needs, stating that they all knew that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the risk by refusing to address the Valley Fever." (*Id.* at 9).

Upon consideration of the relevant legal standards, Plaintiff fails to state a claim for

deliberate indifference to Plaintiff's serious medical needs against any Defendant. Beginning with Dr. Chin-Jeng and John Doe, Plaintiff alleges that he was provided medical care for his symptoms. Specifically, Plaintiff alleges that Dr. Chin-Jeng initially treated him for potential pneumonia by prescribing him antibiotics. Although Plaintiff did not get immediate testing for Valley Fever, he alleges he was tested and diagnosed for Valley Fever relatively shortly thereafter, about a month after requesting such testing.

Moreover, Plaintiff' original complaint alleged that he was treated for Valley Fever relatively soon after complaining of symptoms. Specifically, in Plaintiff's initial complaint, which he verified under penalty of perjury, Plaintiff provided a timeline of the treatment he obtained. (ECF No. 1, pp. 16-18). Among other things, Plaintiff stated that (1) on November 18, 2024, he submitted a health services request form, (2) on December 6, 2024, he received a tomography scan of his chest; (3) "on December 11, 2024, the results of the cocci screening noted evidence of coccidioidomycosis and Fluconazole antifungal medication was ordered" along with "additional diagnostic lab testing"; (4) on January 29, 2025, he had another computed tomograpy scan of his chest; and (5) on February 26, 2025, Dr. Chin-Jeng "ordered additional lab testing, including a cocci titer." (*Id.* at 17-18).

Although Plaintiff has omitted these facts from his first amended complaint, the Court may take them into consideration in determining if Plaintiff has stated a claim for deliberate indifference to serious medical needs. *See Clayton v. Smith*, No. 1:17-CV-00309-BAM (PC), 2018 WL 3218366, at *3 (E.D. Cal. June 29, 2018) ("The Court notes that . . . [Plaintiff] has omitted factual allegations from his original complaint and first amended complaint regarding treatments that he received. . . . Although a plaintiff may make clarifications in an amended pleading, the Court is not required to ignore omissions of fact or contradictions of fact in later pleadings. Thus, the Court will consider omitted factual allegations in the previous pleadings.") (internal citation omitted); *Pickering v. California Dep't of Corr.*, No. 1:13-CV-01164-DAD-BAM (PC), 2016 WL 7104167, at *4 (E.D. Cal. Dec. 5, 2016) (noting that "Plaintiff may not omit relevant facts in his amended complaint in an effort to state a cognizable claim"); *Jefferson v. Medley*, No. 1:13-CV-00035-LJO, 2014 WL 1747590, at *3 (E.D. Cal. May 1,

11

2014) ("Moreover, in his first amended complaint, Plaintiff alleged, under penalty of perjury, that he informed Dr. Jardini he was willing to give up his wheelchair and was then provided with a walker. Upon screening his second amended complaint, the Court cautioned Plaintiff that he could not simply omit facts in order to state a cognizable claim. As before, Plaintiff leaves out any mention of his agreement regarding the wheelchair and makes only a passing reference to the walker. Instead, Plaintiff suggests that correctional officers influenced Plaintiff's placement in a walker. This is not sufficient to state a cognizable claim against Dr. Jardini.").

Accordingly, Plaintiff's first amended complaint does not state a claim for deliberate indifference to serious medical needs against Defendant Chin-Jeng, or John Doe. At most, Plaintiff's allegations would show that they were negligent in failing to properly diagnose and treat his medical condition more quickly. However, the Ninth Circuit has concluded that "[a] showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi*, 391 F.3d at 1060; *see Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").Further, Plaintiffs allegations do not establish that Defendants' diagnosis and treatment was medically unacceptable under the circumstances and that they chose their initial treatment in conscious disregard of an excessive risk to his health.

As for the remaining Defendants—Pfeiffer, Perez, and Guerra—Plaintiff alleges no facts showing that they were involved in his medical care at all. Plaintiff does not allege that they knew of his Valley Fever or lack of treatment and then deliberately disregarded his serious medical needs. Rather, he alleges only their general awareness of Valley Fever, which is not sufficient to allege that they were deliberately indifferent to Plaintiff's particular serious medical needs.

Accordingly, Plaintiff fails to state a claim that any Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

\\\

**IV.     CONCLUSION, ORDER, AND RECOMMENDATIONS**

The Court has screened Plaintiff's first amended complaint and concludes that it sufficiently alleged that Defendants E. Perez and J. Guerra were deliberately indifferent to his safety needs by housing him in a prison where he was at an elevated risk of contracting Valley Fever to proceed past screening. T

However, the Court will recommend that all other claims and Defendants be dismissed without further leave to amend. Notably, the initial screening order addressed similar allegations, advised Plaintiff how they were deficient, provided applicable legal standards, and granted him leave to amend. Thus, granting further leave to amend would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (noting that a court need not grant leave to amend where it would be futile); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (quotation marks and citation omitted).

Accordingly, IT IS ORDERED that the Clerk of Court shall assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

1.  This case proceed on Plaintiff's claims that Defendants E. Perez and J. Guerra were deliberately indifferent to his safety needs by housing him in a prison where he was at an elevated risk of contracting Valley Fever.

2.  All other claims and Defendants be dismissed without further leave to amend.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\

\\\

Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 30, 2026**                    /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE